UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
Mordechai Schwartz,                           :
                                              :
                    Plaintiff,                :          **OPINION AND ORDER**
                                              :          06-CV-1478 (DLI) (CLP)
              -against-                       :
                                              :
Goal Financial LLC,                           :
                    Defendant.                :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

On March 31, 2006, plaintiff Mordechai Schwartz brought suit against defendant Goal

Financial LLC ("Goal Financial") alleging that defendant had violated the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. § 1681 *et seq*., by accessing plaintiff's consumer credit report for a purportedly

impermissible purpose.  On May 19, 2006, defendant filed a motion to dismiss for failure to state

a claim pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the defendant's motion

to dismiss is granted, and the complaint is dismissed without costs to either party.

## Background

Plaintiff received a mail solicitation (the "solicitation") from Goal Financial regarding an

offer of credit to consolidate plaintiff's student loans. (Compl. ¶ 6.) The solicitation, which plaintiff

attached to his complaint, contains a "NOTICE OF CONGRESSIONAL ACTION.  Failure to

respond could result in limitations to your rights pursuant to Congressional bill S. 1932 and may

expose you to Federal rate increases effective 07/01/06."  (Compl. Ex. A.)  The solicitation also

explains that plaintiff's:

> Federal Student Loan(s) may be subject to a) Federal rate increase(s) effective July
> 1, 2006 and b) the terms of Congressional bill S. 1932 which limit your right to
> certain borrower benefits.  This could result in significantly higher monthly interest

and total monthly payments. UNDER CURRENT LAW you may be eligible to reduce your current monthly payment and avoid all future rate increases. IMMEDIATE ACTION is recommended. Contact our office by April 28, 2006 at the number below for further information and/or to confirm eligibility for payment reduction.

(*Id.*) At the bottom of the page, the solicitation provides, "If you do not wish to receive future offers, please call 1-888-5-OPT-OUT. See PRESCREEN & OPT-OUT NOTICE on reverse for additional information." (*Id.*) On the reverse side, the solicitation informs plaintiff, in smaller type, that:

You were selected for this opportunity to reduce your monthly student loan payments because your consumer report met initial criteria. As long as you are in your loan grace period or have entered repayment on each loan chosen for consolidation, you are not currently in default on a Federal student loan, and you are consolidating eligible Federal education loans totaling at least $15,000, you will meet eligibility requirements. If at the time of the offer you no longer meet the initial criteria, this offer may be revoked.

(*Id.*) Plaintiff alleges that defendant pre-screened his consumer credit report to select him (and others) for the solicitation even though plaintiff had neither authorized it to do so, nor did defendant have reason to believe it had the authority to do so. (Compl. ¶¶ 9-11, 15-16.)

Based on these allegations, plaintiff claims that Goal Financial used a consumer report relating to him without a "permissible purpose" in violation of Section 1681b of the FCRA. (*Id.* at ¶¶ 20-22.) According to plaintiff, the solicitation does not constitute a "firm offer of credit" because it lacks definite terms and does not contain "value." Plaintiff further appears to argue that, if the court were to find the solicitation does constitute a firm offer of credit, the solicitation nonetheless violates the FCRA for failing to make required disclosures in a clear and conspicuous manner. (Pl.'s Mem. Opp'n Mot. Dismiss at 6.) Plaintiff makes no allegation that he ever responded to the solicitation or otherwise actually sought credit from Goal Financial.

**Discussion**

## I.  Motion to Dismiss Standard

A court should dismiss under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957). All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir.1995).

When ruling on a motion to dismiss, the court must primarily consider the allegations contained in the complaint. However, the complaint is deemed to include documents attached to the complaint, documents referenced in the complaint, and documents integral to the complaint. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002); Fed. R. Civ. P. 10(c). Because the solicitation at issue here is attached as an exhibit to the complaint, the court may consider its terms in ruling on the motion to dismiss.

## II.  Plaintiff's Claims Under Section 1681b

In Section 1681, Congress made clear that the FCRA is designed, at least in part, to preserve the consumer's privacy in the information maintained by consumer reporting agencies. *See* 15 U.S.C. § 1681(a)(4). Specifically, Congress stated that "there is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for

the consumer's right to privacy." *Id.* One means by which Congress effectuated this purpose was prohibiting the release of consumer credit reports unless the release occurs for one of the permissible purposes set forth in 15 U.S.C. § 1681b(a).

Although many of the enumerated permissible purposes set forth in Section 1681b are transactions initiated by the consumer, Section 1681b provides for limited situations in which a consumer credit agency may furnish a consumer report even though the consumer has not initiated or authorized the release. One such instance is when a credit or insurance provider wants to extend a "firm offer of credit" to the consumer. 15 U.S.C. § 1681b(c)(1)(B)(i). The FCRA defines a firm offer of credit as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l). However, the offer may be conditioned on three specific requirements: (1) the consumer being determined to "meet specific criteria bearing on credit worthiness"; (2) verification "that the consumer continues to meet specific criteria used to select the consumer for the offer"; and (3) the consumer's "furnishing any collateral that is a requirement for the extension of credit." *Id.* In allowing consumer agencies to release information for the purpose of a firm offer of credit, Congress "balance[d] any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." S. Rep. No. 103-209, 13 (1993).

### A. The Material Terms of the Solicitation Were Adequately Disclosed

Plaintiff first argues that his credit was not pre-screened for a permissible purpose because the solicitation he received from defendant lacked definite terms and did not indicate that an offer was actually being made. Defendant, however, asserts that the solicitation constitutes a firm offer

of credit because the terms of a student loan consolidation offer are supplied by the Higher Education Act of 1965 ("HEA"), the federal statute that comprehensively regulates student lending. As such, defendant's solicitation to plaintiff is more objective and specific than other credit offers outside of the student loan consolidation context, regardless of the detail of the solicitation.

In order to properly assess the issues raised in this action, it is necessary to possess an elementary understanding of the HEA and the student loan programs it established. Congress enacted the HEA to address the need to provide access to post-secondary education for all students by helping families and students finance higher education through multiple means. *See* 20 U.S.C. § 1071(a)(1) (2000); *see also, e.g.,* S. Rep. No. 102-204, at 6-9 (1991). The purpose of the HEA is "to keep the college door open to all students of ability, regardless of socioeconomic background." *Pelfrey v. Educational Credit Management Corp.,* 71 F. Supp. 2d 1161, 1163 (N.D. Ala. 1999) (internal quotations omitted). Under the HEA, eligible lenders make guaranteed loans on favorable terms to students or parents to help finance student education. The loans are typically guaranteed by guaranty agencies (state or private) and ultimately by the government. *Id*.

A consolidation loan is one of the several types of loans authorized under the HEA. *See* 20 U.S.C. § 1078-3 (2000). Such a loan pays off the outstanding balances on a borrower's existing loans and consolidates them into a single loan with a fixed interest rate. *Id*. Pursuant to the HEA, when a student borrower has multiple loans with multiple private lenders, another lender is entitled to offer the borrower a consolidation loan. *See* 20 U.S.C. § 1078-3(b)(1)(A). The statute defines an "eligible borrower" as one (1) not subject to a judgment secured through litigation; and (2) who, at the time of the application for a loan consolidation, is in repayment status, in a grace period preceding repayment, or a default borrower who has made arrangements to repay the obligation on

the defaulted loans satisfactory to the holders of the defaulted loans.  *See* 20 U.S.C. § 1078-3(a)(3).

Defendant's solicitation, which offered plaintiff the opportunity to consolidate his student loans in any amount above $15,000 on terms pre-set by the HEA, is sufficiently definite to constitute a firm offer of credit.  The solicitation was conditioned on pre-selected specific criteria bearing on credit-worthiness.[1]  Specifically, the solicitation informed plaintiff that, if he: (1) is in his loan grace period or has extended repayment on each loan chosen for consolidation; (2) is not currently in default on a federal student loan; and (3) is consolidating eligible federal education loans totaling at least $15,000, then he has a loan offer of at least $15,000 from defendant.  (*See* Compl. Ex. A.)

Under the FCRA, "disclosure of every single loan term [is not required] for an offer to be considered firm."  *Cavin v. Home Loan Center, Inc.,* No. 05 Civ. 4987, 2007 WL 92509, at *7 (N.D.Ill. Jan. 10, 2007); *see also Kennedy v. Chase Manhattan Bank,* 369 F.3d 833, 841 (2004) ("a firm offer of credit under the [FCRA] really means a 'firm offer if you meet certain criteria'"); *Murray v. New Cingular Wireless Srvs., Inc.*, 432 F. Supp. 2d 788, 792 (N.D.Ill. 2006), *appeal docketed,* No. 06-2477 (7th Cir. 2006) ("the absence of an interest rate is not detrimental"); *Putkowski v. Irwin Home Equity Corp.,* 423 F. Supp. 2d 1053, 1059 (N.D.Cal. 2006) (finding that an offer which states that the interest ranges from 5.65% to 24% but is "subject to change" and "may not be available" on an amount of credit between $15,000 and $300,000 constituted a "firm offer."). Moreover, unlike most consumer lenders offering credit cards, automobile credit, home equity loans and other types of credit who are essentially free to establish terms and conditions, federal student

---

[1]The FCRA does not require that defendant disclose the criteria used in the pre-selection process.  *See Tucker v. New Rogers Pontiac, Inc.,* No. 03 Civ. 862, 2003 WL 22078297, at *3 (N.D.Ill., Sept. 9, 2003) ("[s]ection 1681(a)(l) provides that a creditor may extend such an offer and later revoke it based on the creditor's own pre-determined criteria, which it need not disclose to the consumer.").

loan consolidators have no discretion to set credit terms given Congressional regulation of the industry. The HEA and the regulations enacted pursuant thereto dictate in minute detail the precise terms that a loan consolidator can offer to a borrower. For instance, the Act provides, *inter alia,* (1) which loans are eligible to be consolidated,[2] (2) the interest rates lenders can charge,[3] (3) the minimum monthly payment amount,[4] (4) when repayment begins,[5] and (5) when repayment ends.[6] The precise terms for a consolidated loan can therefore only be determined and disclosed once the recipient provides the would-be lender with more information about the existing loans.

The only FCRA "firm offer of credit" decision involving a solicitation for student loan consolidation was recently issued by the Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri. *See McDonald v. Nelnet, Inc.,* No. 06 Civ. 1599, 2007 WL 646133 (E.D.Mo. Feb. 23, 2007). In that case, McDonald claimed that her credit had been improperly accessed by Nelnet in connection with a pre-screened mailer that purportedly violated the FCRA because the solicitation was alleged to not be a "firm offer of credit." The mailer stated in relevant part: "**IF YOU CONSOLIDATE YOUR STUDENT LOANS IMMEDIATELY**, you can still lock in this year's low interest rate before the increase takes effect . . . . We can help you lock in an interest rate as low as 4.75%. And, with our borrower benefits you could reduce your rate to 3.5%." *Id*. at *1. The mailer also included two footnotes: "[t]he consolidation loan interest rate

---

[2]*See* 20 U.S.C. § 1078-3(a)(4).

[3] *See* 20 U.S.C. § 1078-3(c); *see also* 34 C.F.R. § 682.202.

[4]*See* 20 U.S.C. § 1078-3(c)(3).

[5]*See* 20 U.S.C. § 1078-3(c)(4).

[6]*See* 20 U.S.C. § 1078-3(c)(2).

is calculated by taking a weighted average of the rates on the federal loans you are consolidating rounded up to the nearest one-eighth percent, not to exceed 8.25%," and "[t]he 4.75% interest rate is available prior to July 1, 2006, for borrowers consolidating in their grace period. Interest rates described are in effect through June 30, 3006, unless otherwise indicated . . . Nelnet reserves the right to modify or terminate the borrower benefits program at its discretion and without prior notice." *Id*.

With respect to the issue of whether the material terms had been adequately disclosed, Judge Perry stated that "[i]f Congress had wanted the FCRA to require that loan amounts, interest rates, or payback times [sic] be specified in a 'firm offer,' it could have done so. So long as the statutory criteria are met . . . then the absence of interest rates and other terms does not prevent the offer from being a 'firm offer of credit.'" *Id*. at * 4. Judge Perry went on to find that the mailer constituted a "firm offer of credit" in part because, even though the exact amount of interest that could be charged was not apparent on the face of the mailer itself, "this rate is specified by law, and could easily be calculated from the information contained in the mailer together with the rates of the student loans that McDonald already had." *Id*.

Similarly, here the court finds that defendant's offer of student loan consolidation must be read to include the Congressionally-set terms and conditions for student loan consolidation.[7]

---

[7]As an exhibit to his memorandum of law in opposition to defendant's motion to dismiss, plaintiff attached another student loan consolidation solicitation that he believed would constitute a firm offer of credit under the FCRA. (*See* Pl.'s Mem. Opp'n Mot. Dismiss at 4.) Although the solicitation offered by plaintiff contained additional detail, the numbers provided were purely hypothetical. For instance, the solicitation repeatedly referenced a 3.5% interest rate; however, the solicitation did not actually offer the recipient a 3.5% interest rate. In any event, the solicitation provided by plaintiff, like the one at issue in this case, constitutes a firm offer of credit because the HEA supplies the actual applicable interest rate.

## B.     The Solicitation Contains "Value"

Plaintiff relies on the Seventh Circuit's decision in *Cole v. U.S. Capital, Inc.* to support his argument that defendant's offer of a minimum of $15,000 credit to those borrowers who meet the permissible post-screen conditions contains no "value." 389 F.3d 719 (7th Cir. 2004). In *Cole,* the Seventh Circuit considered whether a promotional flyer, which stated that the recipient was pre-approved to participate in an exclusive offer, making her eligible to receive a Visa or Mastercard with limits up to $2000 and credit towards an auto loan in an amount up to $19,500, constituted a firm offer of credit under the FCRA. *Id.* at 722. Notably, the offer guaranteed a minimum of $300 in auto credit, stated that interest rates might vary from 2.9 to 24.9%, but contained no other information on how interest would be compounded or terms of repayment. *Id.* at 723.

The Seventh Circuit stated that in considering whether an offer is a firm offer of credit, a court "must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the 'offer' was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit." *Id.* at 728. The court found that the relatively small amount of credit guaranteed in the defendants' offer, combined with the limitation that it must be used for a vehicle purchase, raised the question whether the offer had "value" to the consumer. *Id.* The court further noted that the absence of material terms from the offer, such as the precise interest rate, the method of compounding interest, and the repayment period, rendered it impossible for a court to determine from the pleadings whether the offer had value. *Id.* The court concluded that the flyer did not extend a firm offer of credit, noting that "[t]he statutory scheme of the FCRA makes clear that a 'firm offer' must have sufficient value for the consumer to justify the absence of the statutory

protection of his privacy." *Id.* at 727.

The "sufficient value" requirement established by the Seventh Circuit in *Cole* is not found in the FCRA, and the court is aware of only one decision within the Second Circuit that has considered the Seventh Circuit's reasoning in *Cole*. *See Nasca v. J.P. Morgan Chase Bank, N.A. et al.,* No. 06 Civ. 3472, 2007 WL 678407, at *4 (S.D.N.Y. Mar. 5, 2007). In *Nasca,* the Honorable Sidney H. Stein, United States District Judge for the Southern District of New York, found that the solicitation that Chase mailed to Nasca extended a "firm offer of credit" to plaintiff, and pointedly rejected the "sufficient value" requirement set forth in *Cole*. *Id.* Judge Stein stated, "[t]his Court . . . is loathe to import a requirement into a statutory definition that was not placed there by Congress. If Congress believes the statutory definition of 'firm offer of credit' does not adequately protect a consumer's interest in the privacy of her credit information, it is for Congress to act; it is not for the judiciary to add requirements that do not exist in the statute." *Id.*

The Second Circuit, however, has yet to address the issue of whether the "sufficient value" requirement is applicable in the context of an offer to consolidate student loans. The only instance in which a court has addressed this issue in the student loan consolidation context is in *McDonald*. In that case, Judge Perry, following the Seventh Circuit's *Cole* analysis, found the mailer to have "more than nominal value" because the "amount of a student loan consolidation is set by law, and depends on the amount of existing student loans the recipient has to consolidate." *McDonald,* 2007 WL 646133, at *4.

At the outset, it is important to note the distinctions between the instant action and the situation present in *Cole*. Unlike the purchase-money credit toward some other product offered by the defendant in *Cole*, Goal Financial's business – and its solicitations – concern no other product,

10

just the extension of credit. Indeed, Goal Financial offered plaintiff a minimum of $15,000 of credit, conditioned solely upon his meeting the Congressionally-mandated post-screen criteria, whereas the plaintiff in *Cole* was offered a loan of only $300 toward the purchase of a car at a particular dealership. Also unlike *Cole*, wherein the offer was vague or silent regarding material terms of the offer such as interest rates, method by which interest will be compounded and the repayment period, the material terms of Goal Financial's offer are imposed upon it given the directives set forth by Congress in the HEA. Given these distinctions, and the fact that the FCRA, by its terms, does not explicitly require an offer to have "sufficient value" to constitute a "firm offer of credit," the court will not engage in the "sufficient value" analysis set forth by the Seventh Circuit in *Cole*. The court finds the issue of whether defendant's solicitation has "sufficient value" to be immaterial in the context of a student loan consolidation offer, given that the amount of a student loan consolidation is set by law, and depends on the amount of existing student loans the recipient has to consolidate. However, even if such an analysis is necessary, the court finds defendant's offer to have sufficient value.

Accordingly, plaintiff, as a recipient of defendant's solicitation, has a firm offer of credit, with specific pre-set terms based on the provisions of the HEA.

## II. The Required Disclosures Were Made in a Clear and Conspicuous Manner

Plaintiff also contends that, even if the solicitation contains a firm offer of credit, it nonetheless violates the FCRA for failing to make required disclosures in a clear and conspicuous manner. Plaintiff's argument fails.

The FCRA provides that any person using a consumer credit report to make a firm offer of credit "shall provide with each written solicitation made to the consumer regarding the transaction

a clear and conspicuous statement" disclosing statutorily required information.   15 U.S.C. § 1681m(d).  The notice must inform the consumer that: (1) the recipient's consumer credit report was used in determining who should be sent the offer; (2) the consumer was selected because the consumer satisfied certain criteria; (3) the offer may not be extended if the consumer does not continue to meet the criteria bearing on creditworthiness or provide the required collateral; (4) the consumer has the right to opt out of future offers by prohibiting the unsolicited use of information contained in their consumer file; and (5) the consumer may exercise that right by calling a specified toll-free number or by contacting the credit agency at a given address.  *See id*.

The FCRA does not define the term "clear and conspicuous."  However, courts have drawn upon the wealth of case law involving the Uniform Commercial Code ("UCC") and the Truth in Lending Act ("TILA") for guidance in determining the meaning of "clear and conspicuous" under the FCRA.  *See Cole*, 389 F.3d at 730; *see also Stevenson v. TRW Inc.,* 987 F.2d 288, 295 (5th Cir. 1993) (defining "clear and conspicuous" language used in 15 U.S.C. § 1681m(d) with reference to TILA and UCC cases).  For instance, the Seventh Circuit stated in *Cole* that "there is no one aspect of a notice that necessarily will render it 'clear and conspicuous' for purposes of the FCRA."  389 F.3d at 731.  Rather, a court must consider:  (1) the location of the notice within the document; (2) the type size used within the notice as well as the type size in comparison to the rest of the document; and (3) whether the notice is set off in any other way – spacing, font style, all capitals, etc.  *Id*.  "In short, there must be something about the way that the notice is presented in the document such that the consumer's attention will be drawn to it."  *Id*.

Here, the required disclosures, along with the terms of defendant's offer to consolidate plaintiff's student loans, are provided on the reverse side of the solicitation in a single paragraph.

However, at the bottom of the front-side of the solicitation, set-off in one of the three boxes found on the page and in a type size proportionate to the rest of the document, the solicitation provides, "If you do not wish to receive future offers, please call 1-888-5-OPT-OUT. See PRESCREEN & OPT-OUT NOTICE on reverse for additional information." (Compl. Ex. A.)

In *Cole,* the Seventh Circuit found that the disclosure statement at issue is "disproportionately small compared to the surrounding text," "is the smallest text on a page filled with larger type," and "does nothing to draw the reader's attention to the materia." 389 F.3d at 731. However, the disclosure statement at issue here does not suffer from the same ailments. The text of the disclosure statement, while smaller than that used on the front-side of the solicitation, is not disproportionately small compared to the surrounding text because it is the only text found on that page. Moreover, the text on the front-side, which signals to the reader that the disclosure statement is on the reverse side, is set-off in one of the three boxes on the page, uses the same size font as that found on the rest of the page, and capitalizes the words "prescreen" and "opt-out notice."

Accordingly, the court finds that defendant's solicitation complies with Section 1681m's requirement that disclosure be "clear and conspicuous."

**Conclusion**

For the foregoing reasons, defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

is granted in its entirety, and the complaint is dismissed without costs to either party.

SO ORDERED.


DATED:          Brooklyn, New York
                March 15, 2007


_____/s/_____
                DORA L. IRIZARRY
                United States District Judge_____

_____